UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

HAIDO IRENE HATZIMIHALIS,

                  Plaintiff,

v.

SMBC NIKKO SECURITIES AMERICA, INC.,
JOHN BOLGER and OMAR ZAMAN, in their
individual and professional capacities,

                  Defendants.

---------------------------------------------------------------X

Civil Action No.: 20-cv-08037 (JPC)

**THIRD AMENDED COMPLAINT**

**Jury Trial Demanded**

      Plaintiff Haido Irene Hatzimihalis ("Hatzimihalis" or "Plaintiff"), as and for her Third Amended Complaint against Defendants SMBC Nikko Securities America, Inc. ("SMBC" or the "Bank"), John Bolger ("Bolger") and Omar Zaman ("Zaman") (together, "Defendants"), hereby alleges as follows:

**PRELIMINARY STATEMENT**

      1.     Hatzimihalis is one of the legions of women on Wall Street who is woefully underpaid. Despite being a successful financial services executive, SMBC paid her less than her comparable male colleagues and – remarkably – less than junior male employees whom she trained and supervised. Fed up, Hatzimihalis protested repeatedly about the pay gap and lack of opportunities for women. No one disagreed with her. But neither did anyone step up to correct the problem. Rather, her male supervisors offered to "run it up the chain" and "try" to fix the problem while continuing to favor male employees in pay, opportunities and promotions. To make matters worse, the male executives began to retaliate against Hatzimihalis for demanding equality by cutting her compensation by more than $200,000 and ominously telling her that she should leave the Bank "sooner rather than later." Hatzimihalis protested, by among other things,

filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and this lawsuit.  Defendants fired her in retaliation.

2. Defendants' conduct violated the equal pay, anti-discrimination and anti-retaliation provisions of the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); the New York State Pay Equity Law, N.Y. Lab. Law § 194 *et seq.* ("NYSPEL"); the Equal Pay Act, 29 U.S.C. § 206 *et seq.* ("EPA"); and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").[1]

## JURISDICTION AND VENUE

3. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves federal questions under the EPA and Title VII.

4. The Court has supplemental jurisdiction over the Local Laws claims pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

6. Plaintiff filed a Charge of Discrimination and Retaliation with the EEOC on September 29, 2020 and received a Notice of Right to Sue on April 29, 2021.  On April 23, 2021, Plaintiff filed an additional Charge of Discrimination and Retaliation with the EEOC including asserting her Title VII claims regarding the termination of Plaintiff's employment by Defendants and received a Notice of Right to Sue on July 9, 2021.

---

[1] The NYSHRL, NYSPEL and NYCHRL are referred to collectively as the "Local Laws."

7.     Pursuant to NYCHRL § 8-502, Plaintiff has served a copy of the Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, within ten days of its filing, thereby satisfying the notice requirements of that section.

8.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

9.     Plaintiff Hatzimihalis is a Vice President of Debt Capital Markets at SMBC and was, at all relevant times, an "employee" under the EPA and Local Laws.

10.    Defendant SMBC is a foreign corporation incorporated in Delaware with its principal office in New York, New York.  SMBC was, at all relevant times, an "employer" under the EPA and Local Laws.

11.    Defendant Bolger is Co-Head of Debt Capital Markets at SMBC.  Bolger was, at all relevant times, an "employer" within the meaning of the EPA and Local Laws.  Bolger also participated in the unlawful conduct described herein.

12.    Defendant Zaman is Co-Head of Debt Capital Markets at SMBC.  Zamman was, at all relevan times, an "employer" withing the meaning of the EPA and Local Laws.  Zaman also participated in the unlawful conduct described herein.

## FACTUAL ALLEGATIONS

I.    **BACKGROUND**

13.    Hatzimihalis is an experienced and successful finance professional.

14.    She earned her Bachelor of Science in Economics from the Athens University of Economics and Business in Greece and her Masters in Banking and Finance from the Università degli Studi di Siena in Italy.

15. From 2005 to 2009, Hatzimihalis worked as an Analyst in Debt Capital Markets at BMO Capital Markets ("BMO"), where she analyzed historical data and projected financial information for public and private companies, performed pro forma for new issuance financial analysis and capital structure, prescreened potential investors and led the development of new business.

16. Beginning in 2009, Hatzimihalis expanded her expertise by studying Financial Modeling, Valuing a Business, Corporate Finance, Venture Capital, Private Equity and Advanced Corporate Finance at the New York University Continuing Education Program.

17. Upon completion of the program, SMBC hired Hatzimihalis as an Assistant Vice President in the Debt Capital Markets Group. As a result of her excellent work, in 2015, Hatzimihalis earned a promotion to Vice President.

## II. SMBC DISCRIMINATES AGAINST HATZIMIHALIS

18. When she started, Hatzimihalis was the only female employee in her group.

19. Defendants paid Hatzimihalis less than her male colleagues who perform substantially equal work.

20. In 2014, Defendants paid Hatzimihalis an annual salary of approximately $85,000 as an Assistant Vice President.

21. After hiring Hatzimihalis, Defendants paid newly-hired male Analysts – who were junior to Hatzimihalis – $110,000 annually.[2]

---

[2] This was not the first time SMBC discriminated against Hatzimihalis. In 2013, SMBC cut Hatzimihalis's bonus by $44,000 because she was pregnant.

4

22.     In Summer 2014, Hatzimihalis protested the pay gap to then-Vice President (now Director) Jeremy Sisselman, who did not deny the disparity.  Sisselman, however, failed to remedy the problem.  Rather, he offered to "run it up the chain."

23.     She also protested to the Head of Debt Capital Markets, Yoshihiro Satake, who, remarkably, admitted that he was aware of the pay disparity.

24.     Satake, too, failed to fix the problem.  Rather, he stated that he would "try" to resolve the inequality with a year-end bonus.

25.     Sadly, the pay inequality continued.  For example, in 2014 and 2015, Defendants hired two men, Chris Nieves and William Asmundson, as Analysts who were junior to Hatzimihalis but paid them more.

26.     Further, Defendants have advanced the careers of less-qualified men while denying Hatzimihalis career opportunities.  For example, Defendants expected Hatzimihalis to train and supervise better-paid but less-qualified subordinates, including Nieves.  She did so.

27.     Defendants quickly moved Nieves and Asmundson up the ranks, promoting them to Associate (2016), Vice President (2017) and Director (2020).

28.     During this time, Defendants gifted these men and others with plum client opportunities, while denying the same to Hatzimihalis.

29.     For example, despite Hatzimihalis's greater experience and tenure, Defendants gave Asmundson far more client-facing opportunities, while Hatzimihalis was regularly excluded from similar meetings.

30.     Not surprisingly, as Defendants supercharged the careers of junior men, they systematically marginalized Hatzimihalis.

31. In 2016, Satake directed Hatzimihalis to report to a new male hire, Defendant Bolger, and speak to Bolger about the client assignments. For weeks, however, Bolger refused to discuss client assignments with Hatzimihalis while she sat around with little to do.

32. Hatzimihalis eventually complained to Satake about her obviously diminished role. Eventually – and grudgingly – Bolger gave Hatzimihalis only five less-desirable clients.

33. This trend continued: Nieves, Asmundson, Bolger and, upon information and belief, other men were handed top-earning clients, while Hatzimihalis was assigned fewer opportunities to engage with these clients face-to-face and fewer opportunities to work with other members of the Debt Capital Markets Group.

34. Things only became worse when Satake left SMBC in the Summer of 2019. Predictably, SMBC promoted two men, Bolger and Zaman, to Co-Heads of Debt Capital Markets.

35. SMBC promoted a third man, Jonathan Anderson, to Head of Syndicate and a fourth, Jeffrey Benson, to Head of High Yield Capital Markets. (Remarkably, SMBC could not find a single woman to promote during this time.)

36. In Summer 2019, in a meeting between Zaman, Bolger and Hatzimihalis, Zaman suggested that Hatzimihalis should become a Relationship Manager, a role that is not aligned with her many years of experience and education.

37. Indeed, Zaman, Bolger and others often mocked Relationship Managers, stating that they did not have difficult jobs and only needed to talk about the weather.

38. Hatzimihalis, sensing that she was, once again, being marginalized, asked further questions of Bolger and Zaman about her position in the Debt Capital Markets Group.

39. Bolger assured her – falsely – that her position was safe.

40. In late 2019, Hatzimihalis complained to Bolger about the discriminatory treatment. In an obvious comparison to her glorified male peers, Hatzimihalis protested that she needed "to prove [her]self all the time" and that many of her accomplishments are either "discounted" or "lost."

41. In a transparent attempt to placate Hatzimihalis, Bolger offered to "keep talking" about the double standard but never remedied the problem.

42. On April 24, 2020 (Hatzimihalis's next scheduled review), Zaman and Bolger gave Hatzimihalis a negative performance evaluation.

43. They admitted that the feedback they received about Hatzimihalis was very positive. They knew that Hatzimihalis was likable, colleagues enjoyed working with her and that she was doing well with banking – "delivering" the Bank to clients, working around investor diversification and broadening investor base with clients and various collaborations with other teams within SMBC.

44. They nevertheless falsely criticized her performance, stating that Hatzimihalis was struggling to be a leader and mentor to the junior members of the team, and provided vague and evasive feedback without providing specific performance standards and areas of improvement.

45. In fact, to the extent Hatzimihalis was not viewed as a "leader," it was because the Bank's male executives consistently diminished her by, among other things, favoring male employees and excluding Hatzimihalis (a woman) from supervisory functions such as hiring despite her role a Vice President.

46. In fact, in 2019, among other things, Hatzimihalis acquired a significant deal for SMBC. The achievement was far more important that most of the deals that the men completed. Nonetheless, Bolger and Zaman downplayed the significance of Hatzimihalis's success.

47. The false criticism was merely a ruse to deny Hatzimihalis – one of the few women in the group – a promotion.

48. On May 22, 2020, Defendants drastically cut Hatzimihalis's annual bonus. She received $100,000, which was appropriate for a Junior Analyst, not a Vice President like Hatzimihalis. In previous years, Hatzimihalis earned bonuses of over $300,000.

49. It quickly became clear that Defendants slashed Hatzimihalis's bonus in order to push her out.

50. Bolger and Zaman made it clear that they did not want Hatzimihalis in the male-dominated group. They told her to look for other jobs within SMBC. However, they also told her that finding such an alternate in-house position would be difficult because she was a "gap employee."

51. Accordingly, they told her to leave the Bank entirely "sooner rather than later."

### III. DEFENDANTS FIRE HATZIMIHALIS

52. Hatzimihalis refused, continuing to protest Defendants' unlawful efforts to push her out.

53. On September 29, 2020, Hatzimihalis filed the instant lawsuit and a Charge of Discrimination with the EEOC.

54. Almost immediately, Defendants began looking for reasons to fire Hatzimihalis.

55. Moreover, Defendants made clear that if Hatzimihalis did not resolve her claims – and thus drop her lawsuit and withdraw her EEOC charge – they would fire her.

56. In early March 2021, Defendants' efforts failed.

57. Within days, Defendants fired Hatzimihalis based on false performance criticisms.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of the EPA)
*Against All Defendants*

58. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 57 of this Complaint as if set forth herein.

59. By the acts and practices described above, Defendants violated the EPA by paying male employees higher wages than Plaintiff for substantially equal work in a job which required equal skill, effort and responsibility, and which was performed under similar working conditions.

60. Defendants' conduct was willful and they knew that their actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for Plaintiff's statutorily protected rights.

61. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the EPA)
*Against All Defendants*

62. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 61 of this Complaint as if set forth herein.

63. By the acts described above, Defendants retaliated against Plaintiff for engaging in protected activity under the EPA.

64. Defendants' conduct was willful and they knew that their actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for Plaintiff's statutorily protected rights.

65. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

### THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
*Against All Defendants*

66. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 65 of this Complaint as if set forth herein.

67. By the acts described above, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of the NYSHRL.

68. Defendants' conduct was willful and they knew that their actions constituted unlawful discrimination and/or showed reckless disregard for Plaintiff's statutorily protected rights.

69. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

### FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
*Against All Defendants*

70. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 69 of this Complaint as if set forth herein.

71. By the acts described above, Defendants retaliated against Plaintiff for engaging in protected activity under the NYSHRL.

72.     Defendants' conduct was willful and they knew that their actions constituted unlawful retaliation and/or showed reckless disregard for Plaintiff's statutorily protected rights.

73.     Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

### FIFTH CAUSE OF ACTION
**(Discrimination in Violation of the NYCHRL)**
*Against All Defendants*

74.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 73 of this Complaint as if set forth herein.

75.     By the acts described above, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of the NYCHRL.

76.     Defendants' conduct showed willful and/or wanton negligence, recklessness and conscious disregard for Plaintiff's statutorily protected rights.

77.     Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

### SIXTH CAUSE OF ACTION
**(Retaliation in Violation of the NYCHRL)**
*Against All Defendants*

78.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 77 of this Complaint as if set forth herein.

79.     By the acts described above, Defendants retaliated against Plaintiff for engaging in protected activity under the NYCHRL.

80.     Defendants' conduct showed willful and/or wanton negligence, recklessness and conscious disregard for Plaintiff's statutorily protected rights.

81. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

## SEVENTH CAUSE OF ACTION
### (Violations of NYSPEL)
*Against All Defendants*

82. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 81 of this Complaint as if set forth herein.

83. By the acts and practices described above, Defendants violated the NYSPEL by paying male employees higher wages than Plaintiff for substantially similar work based on a composite of skill, effort and responsibility, and which was performed under similar working conditions.

84. Defendants' conduct was willful and they knew that their actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for Plaintiff's statutorily protected rights.

85. Plaintiff has suffered and will continue to suffer damages as a result of Defendants' willful and unlawful conduct unless and until this Court grants relief.

## EIGHTH CAUSE OF ACTION
### (Retaliation in Violation of NYSPEL)
*Against Defendant SMBC*

86. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 85 of this Complaint as if set forth herein.

87. By the acts described above, Defendants retaliated against Plaintiff for engaging in protected activity under the NYSPEL.

88. Defendants' conduct was willful and they knew that their actions constituted unlawful retaliation and/or showed reckless disregard for Plaintiff's statutorily protected rights.

89. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

## NINTH CAUSE OF ACTION
### (Discrimination in Violation of Title VII)
*Against SMBC*

90. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 89 of this Complaint as if set forth herein.

91. By the acts described above, Defendant SMBC discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

92. Defendant SMBC's conduct was willful and it knew that its actions constituted unlawful retaliation and/or showed reckless disregard for Plaintiff's statutorily protected

93. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

## TENTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII)
*Against SMBC*

94. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 93 of this Complaint as if set forth herein.

95. By the acts described above, Defendant SMBC retaliated against Plaintiff for engaging in protected activity under the Title VII.

96. Defendant SMBC's conduct was willful and it knew that its actions constituted unlawful retaliation and/or showed reckless disregard for Plaintiff's statutorily protected rights.

97. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a Judgment:

A.   declaring the acts and practices complained of herein to be violations of Title VII, the EPA, the NYSPEL, the NYSHRL and the NYCHRL;

B.   enjoining and permanently restraining these violations of Title VII, the EPA, the NYSPEL, the NYSHRL and the NYCHRL;

C.   directing Defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

D.   directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment of her, and making her whole for all earning and other benefits she would have received but for Defendants' discriminatory treatment, including but not limited to wages, including back pay and front pay, bonuses and other lost benefits;

E.   directing Defendants to pay Plaintiff liquidated damages for their violations of the EPA and the NYSPEL;

F.   directing Defendants to pay Plaintiff compensatory damages including damages for emotion distress, humiliation, pain and suffering and injury to professional standing and reputation;

G.   directing Defendants to pay Plaintiff additional amounts as punitive damages;

H.   awarding Plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award;

      I.      awarding Plaintiff the costs of this action, together with reasonable attorneys' fees; and,

      J.      awarding such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure Rule 38(b), Plaintiff demands a trial by jury in this action.

Dated: July 23, 2021
       New York, New York        Respectfully submitted,

                                                   **WIGDOR LLP**

                                                   By: _____
                                                         Valdi Licul
                                                         Lindsay M. Goldbrum

                                                     85 Fifth Avenue
                                                     New York, NY 10003
                                                     Telephone: (212) 257-6800
                                                     Facsimile: (212) 257-6845
                                                     vlicul@wigdorlaw.com
                                                     lgoldbrum@wigdorlaw.com

                                                   *Attorneys for Plaintiff*