PROSKAUER ROSE LLP
Lloyd B. Chinn
Eleven Times Square
New York, New York 10036
Tel. 212.969.3000
Fax 212.969.2900
lchinn@proskauer.com

Alexandra R. Reynolds
One International Place
Boston, MA 02110
Tel. 617.526.9600
Fax 617.526.9899
areynolds@proskauer.com

*Attorneys for Defendants*
SMBC Nikko Securities America, Inc., John Bolger, and Omar Zaman

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

HAIDO IRENE HATZIMIHALIS,

               Plaintiff,

         v.

SMBC NIKKO SECURITIES AMERICA, INC.,
JOHN BOLGER and OMAR ZAMAN, in their
individual and professional capacities,

               Defendants.

------------------------------------------------------------X

Civil Action No.: 20-cv-08037 (JPC)

**ECF CASE**

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................................1

ARGUMENT ...................................................................................................................................1

I.      Plaintiff's Equal Pay Act and New York State Pay Equity Law Claims Fail as a Matter of Law. ....................................................................................................................1

          A.      No Prima Facie Case Can Be Made Because the Undisputed Facts Are that a Woman Was Always the Highest Paid Peer of the Comparator Group. ..................1

          B.      The Undisputed Facts Establish That Any Pay Disparity Was Based on Business-Related Factors Other than Sex. ...............................................................4

          C.      Plaintiff Has Failed to Identify Any Evidence of Pretext. .......................................6

II.     Plaintiff's Title VII, NYSHRL, and NYCHRL Claims Fail As a Matter of Law. ..............7

III.    Plaintiff's Retaliation Claims Fail as a Matter of Law. .......................................................8

IV.   Plaintiff Cannot Avoid Summary Judgment By Contradicting Her Own Sworn Testimony or Claiming Unfavorable Evidence Comes From "Interested Witnesses." .....10

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Bentivegna v. People's United Bank*,
   2017 WL 3394601 (E.D.N.Y. Aug. 7, 2017) ................................................................................9

*Boatright v. U.S. Bancorp*,
   2020 WL 7388661 (S.D.N.Y. Dec. 16, 2020),
   *aff'd*, 2022 WL 351059 (2d Cir. Feb. 7, 2022) ...........................................................................9

*Brown v. Henderson*,
   257 F.3d 246 (2d Cir. 2001) ........................................................................................................2

*Bucek v. Gallagher Bassett Servs., Inc.*,
   2018 WL 1609334 (S.D.N.Y. Mar. 29, 2018) .........................................................................9, 10

*Doe v. Columbia Univ.*,
   831 F.3d 46 (2d Cir. 2016) ........................................................................................................10

*EEOC v. Maryland Ins. Admin.*,
   879 F.3d 114 (4th Cir. 2018) ......................................................................................................3

*Engwiller v. Pine Plains Cent. Sch. Dist.*,
   110 F. Supp. 2d 236 (S.D.N.Y. 2000) ........................................................................................7

*Holleman v. Art Crating Inc.*,
   2014 WL 4907732 (E.D.N.Y. Sept. 30, 2014) ..........................................................................10

*Juarez v. Nw. Mut. Life Ins. Co.*,
   69 F. Supp. 3d 364 (S.D.N.Y. 2014),
   *amended*, 2014 WL 12772237 (S.D.N.Y. Dec. 30, 2014) ..........................................................2

*Kazolias v. IBEW LU 363*,
   806 F.3d 45 (2d Cir. 2015) .......................................................................................................10

*Kohler v. Brennan*,
   238 F. Supp. 3d 1112 (E.D. Wisc. 2017) ..................................................................................10

*Lavin-McEleney v. Marist Coll.*,
   239 F.3d 476 (2d Cir. 2001) ......................................................................................................2

*Liang v. Café Spice SB, Inc.*,
   911 F. Supp. 2d 184 (E.D.N.Y. 2012) ........................................................................................1

*Mello v. Siena Coll.*,
   2017 WL 1013077 (N.D.N.Y. Mar. 14, 2017) ............................................................................5

*Milani v. Int'l Bus. Mach. Corp., Inc.*,
   2004 WL 3068451 (S.D.N.Y. Dec. 30, 2004) ...........................................................................10

*Morgan v. U.S. Soccer Fed'n*,
   445 F. Supp. 3d 635 (C.D. Cal. 2020), *cert. denied*, 2020 WL 4390368
   (C.D. Cal. June 23, 2020) ...........................................................................................................4

*Sempowich v. Tactile Sys. Tech., Inc.*,
    19 F.4th 643, 655 n.5 (4th Cir. 2021) ...................................................................................3

*Stratton v. Dep't for the Aging*,
    132 F.3d 869 (2d Cir. 1997) ................................................................................................8

*Sumner v. U.S.P.S.*,
    899 F.2d 203 (2d Cir. 1990) ..............................................................................................10

*Syeed v. Bloomberg L.P.*,
    2021 WL 4952486 (S.D.N.Y. Oct. 25, 2021) ......................................................................3

*Talwar v. Staten Island Univ. Hosp.*,
    610 F. App'x 28 (2d Cir. 2015) .......................................................................................1, 2

*Tomka v. Seller Corp.*,
    66 F.3d 1295 (2d Cir. 1995) ................................................................................................8

*Tube City IMS, LLC v. Anza Cap. Partners*,
    2016 WL 5864887 (S.D.N.Y. Oct. 6, 2016) ........................................................................9

*Weinstock v. Columbia Univ.*,
    1996 WL 658437 (S.D.N.Y. Nov. 13, 1996) .......................................................................8

**Other Authorities**

42 U.S.C. 1981 ..............................................................................................................................2

Civil Rights Act of 1964 § 7 .....................................................................................................2, 7

Equal Pay Act .................................................................................................................1, 2, 3, 8

New York City Human Rights Law ...............................................................................................7

New York State Human Rights Law ..............................................................................................7

New York State Pay Equity Law ..........................................................................................1, 2, 3

**PRELIMINARY STATEMENT**

Notwithstanding Plaintiff's 40 pages of irrelevant and repetitive 56.1 assertions, the following essential facts remain undisputed: (1) SMBC Nikko Securities America, Inc. ("Nikko America" or the "Company") paid a woman the most of four comparators on Plaintiff's team for each fiscal year at issue; (2) multiple supervisors and colleagues considered Plaintiff an underperformer; (3) Plaintiff's marketing and coverage efforts paled in comparison to her peers, male and female alike; (4) Nikko America began to address Plaintiff's underperformance—even deciding to terminate her—long before any protected activity; and (5) both a client and senior Company executive contacted Plaintiff's supervisor dissatisfied with Plaintiff's actions prior to her termination. Consequently, her gender discrimination and retaliation claims against Nikko America, John Bolger, and Omar Zaman (collectively, "Defendants") should be dismissed.

**ARGUMENT**

I. **Plaintiff's Equal Pay Act ("EPA") and New York State Pay Equity Law ("NYSPEL") Claims Fail as a Matter of Law.**

   A. No Prima Facie Case Can Be Made Because the Undisputed Facts Are that a Woman Was Always the Highest Paid Peer of the Comparator Group.

It is undisputed that Nikko America paid Plaintiff more than both male peers Chris Nieves and Will Asmundson in fiscal years 2014, 2015, and 2016, and paid Kaitlin Howard, a woman, more than Nieves and Asmundson in all subsequent fiscal years thereafter. (Defendants' 56.1 Statement ("DSF") ¶¶40-41, 48, 56-57, 198, 249, 253-254.) To avoid those facts, Plaintiff completely ignores the Second Circuit's *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28 (2d Cir. 2015) decision. In *Talwar*, just as here, a female peer was the highest paid of the group and consequently, the plaintiff could not establish a *prima facie* case that the employer paid different wages to employees of the opposite sex. *Id*. at 30-31; *see also Liang v. Café Spice SB, Inc.*, 911 F. Supp. 2d 184, 204 (E.D.N.Y. 2012) (same). The cases Plaintiff cites do not

1

contradict *Talwar*. The court in *Lavin-McEleney v. Marist College* did not consider the quantum of proof needed to avoid summary judgment, finding such a question "no longer relevant" post-trial and jury verdict. 239 F.3d 476, 479 (2d Cir. 2001). Further, the *Lavin-McEleney* court examined whether the male employee's position was "substantially equivalent," not whether a female comparator defeated Plaintiff's claim.[1] Plaintiff's assertion that the NYSPEL is somehow immune from this argument fails as *Talwar* expressly approved the granting of summary judgment on the NYSPEL claim on the same basis. 610 F. App'x at 30-31.

      Instead, Plaintiff tries to deflect by comparing pay across disparate time periods rather than within the same years—on its face, particularly in banking, not an "apples to apples" comparison. Desperate to avoid detrimental data, Plaintiff inconsistently mixes and matches the years she chooses to compare as she seeks any possible combinations to support her theory. *Compare* Plaintiff's 56.1 Statement of Facts ("PSF") ¶193 (comparing Asmundson's first-year associate pay to Plaintiff's 2012 pay) to ¶158 (comparing Nieves' first-year associate pay to Plaintiff's 2013 pay). Yet Plaintiff cannot escape the following undisputed facts: the Debt Capital Market ("DCM") group's compensation was historically lower than that of a typical public market enterprise as DCM had predominantly focused on private transactions (DSF ¶¶13-14, 21); DCM head Yoshihiro Satake paid more in base salary to attract candidates to support the new public debt market focus (DSF ¶¶15-17, 20-23); as Satake worked to standardize base salaries, he addressed legacy to new hire salary disparities with bonus compensation (DSF ¶¶24-25); the bonus pool size changed yearly depending on how well Nikko America, its parent companies, and the DCM group financially performed and, as the DCM business grew, Satake

---

[1] The other two cases cited by Plaintiff do not involve EPA claims. *See Juarez v. Nw. Mut. Life Ins. Co.*, 69 F. Supp. 3d 364 (S.D.N.Y. 2014), *amended*, 2014 WL 12772237 (S.D.N.Y. Dec. 30, 2014) (Title VII and 42 U.S.C. 1981 discrimination); *Brown v. Henderson*, 257 F.3d 246 (2d Cir. 2001) (Title VII).

(and later Bolger and Zaman) secured ever larger overall bonus pools each year. (DSF ¶¶191-193, 244-245.) Comparing pay across years under these circumstances thus makes no sense.[2] And neither case Plaintiff cites supports such a comparison. In *Syeed v. Bloomberg L.P.*, no comparison of pay across years occurred. 2021 WL 4952486, at *4 (S.D.N.Y. Oct. 25, 2021). And while at first glance, *EEOC v. Maryland Insurance Administration* appears supportive in that it compares starting salaries across years, that is only because the pay system at issue there followed a state agency's standardized pay scale each year. 879 F.3d 114, 116 (4th Cir. 2018). The pay system there bears no similarity to that at issue here, where pay is largely comprised of discretionary year-end bonus awards that can fluctuate dramatically each year.

      Plaintiff's final attempt to establish a *prima facie* EPA/NYSPEL case relies on a clearly inapplicable EEOC regulation. To the limited extent it has been addressed by the courts, it merely stands for the proposition that an employer cannot avoid EPA liability by having the woman "work hard enough to earn extra money through commissions or bonuses" resulting in higher total compensation. *Sempowich v. Tactile Sys. Tech., Inc.* 19 F.4th 643, 655 n.5 (4th Cir. 2021). In the years Satake used bonus compensation to address the legacy to new hire disparity, it is undisputed he based bonus awards on achieving that goal—increasing Plaintiff and other legacy hires' compensation to address the disparity that hiring within the new competitive market caused. (DSF ¶¶25, 39.) Having been paid over $▓▓▓▓ more than Nieves or Asmundson in 2014, 2015, and 2016 (DSF ¶¶40-41, 48, 56-57), there has been no claim, much

---

[2] That Satake recommended Plaintiff receive a $▓▓▓▓ salary when promoting her to Vice President in 2015—but was only able to secure $▓▓▓▓ upon her promotion (Plaintiff's Brief ("Pl. Br.") p. 3) shows that Satake had more flexibility with bonus compensation than base salary for legacy employees. Further demonstrating that the disparity was between legacy versus new hire (and not male versus female), Satake was able to secure a $▓▓▓▓ base salary for Kaitlin Howard, a woman and new hire, as a Vice President the very next year (DSF ¶53).

3

less evidence presented, that Plaintiff was asked to—or in fact did—work better or harder than her comparators as a means to earn more in total compensation.[3]

### B. The Undisputed Facts Establish That Any Pay Disparity Was Based on Business-Related Factors Other than Sex.

Not only is it undisputed that Plaintiff attempted to prospect just one single client her entire tenure while Howard, Asmundson, and Nieves engaged in more prospecting and business development efforts (DSF ¶¶127-134), it is also undisputed that supervisors considered Plaintiff the lowest performer among the four and that colleagues considered her an underperformer.[4]

Plaintiff's attempt to argue bonuses were based entirely on primary revenue generation (Pl. Br. 13) conflicts with the undisputed evidence. It is undisputed Satake resolved the new hire to legacy disparity by FY 2017 and thus, no longer considered it in setting bonuses. (DSF ¶¶187-188.) He then began basing bonuses on multiple performance factors including how proactively the individual marketed DCM services to clients, the individual's new client prospecting efforts, and revenue generation.[5] (DSF ¶194.) Similarly, in FY 2019 and 2020 when Bolger and Zaman determined pay, they testified to considering several factors in addition to revenue, including level of proactive primary and secondary coverage, pursuit of prospective clients, leadership and training of juniors, and performance evaluations. (DSF ¶¶246-247.)

---

[3] Examining total compensation is appropriate in the absence of evidence that plaintiffs had to work harder to earn more total compensation. *See Morgan v. United States Soccer Fed'n*, 445 F. Supp. 3d 635, 654 (C.D. Cal. 2020), *cert. denied*, 2020 WL 4390368 (C.D. Cal. June 23, 2020).

[4] It is immaterial that Plaintiff's goal paperwork did not identify prospecting as a requirement or that Plaintiff now disputes such efforts were part of the role of a Vice President. (Pl. Br. 15; Pl. Resp. to DSF ¶¶126, 205.) An employer is free to pay employees for going beyond their formal job requirements in the performance of their duties.

[5] Plaintiff attempts to dispute Satake's testimony by noting Nieves and Asmundson were paid ▮▮▮▮▮ despite generating different revenue figures (*see* Pl. Resp. to DSF ¶194), but this proves nothing and does not call into question the factors upon which Satake relied in making bonus decisions.

Based on Satake's observations following Plaintiff acquiring primary coverage in 2016, he viewed her performance less favorably than her peers.[6] By contrast, it is undisputed that Satake observed Howard, Nieves, and Asmundson proactively engaging in both primary and secondary coverage. (DSF ¶105.) It is further undisputed Bolger and Zaman thought Plaintiff was the lowest performer of the four, providing her a "Gaps" rating while rating Howard, Nieves, and Asmundson "▮▮▮▮▮."[7] (DSF ¶¶236-239.) Howard, a female colleague, also considered Plaintiff an underperformer based on her own direct observations. (DSF ¶¶178-179.) Likewise, it is undisputed that colleague Tony Capozzoli considered Plaintiff's lack of contribution in a client meeting unusual compared to peers. (DSF ¶¶180-185.) Plaintiff's disagreement with multiple negative assessments of her performance does not give rise to a genuine dispute. *Mello v. Siena Coll.*, 2017 WL 1013077 at *17-18 (N.D.N.Y. Mar. 14, 2017).

Plaintiff's reliance on earlier positive reviews is misplaced, as they were issued before she assumed the duties of a Vice President. (DSF ¶¶58-64, 86.) It is undisputed that, for the first year she acquired primary account coverage, she received a lower rating than prior years and a lower rating than all three peers. (DSF ¶¶107-114.) And it is undisputed that Satake, Bolger, and Zaman viewed her as the poorest performer in 2017 and 2018.[8] (DSF ¶¶104-105, 115-119.)

---

[6] Satake did not witness Plaintiff proactively generating client ideas, fostering and building client relationships, taking ownership of coverage responsibilities, or mastering the technical knowledge necessary to enable her to proactively generate ideas and solutions for DCM clients. (DSF ¶¶104-105.)

[7] Plaintiff's FY 2019 Performance Evaluation specifically stated she "needs to add value with conviction to her clients," "has struggled to lead the junior members," must "lead a more advanced dialogue with the client not just bring the expert into the room," and have "an independent view deliv[ered] with conviction." (Chinn Dec. Ex. 42.)

[8] Plaintiff's reference to Zaman and Bolger not reviewing Plaintiff's former evaluations when becoming co-heads (Pl. Br. 17, n.11) is immaterial. By July 2019, both Zaman and Bolger had substantial prior experience with Plaintiff (DSF ¶¶26, 103; DSF ¶¶84-89, 94-95), providing them both with ample opportunity to observe her client coverage performance. Defendants do not claim Plaintiff "suddenly forgot to do her job" (Pl. Br. 16 n.10); as she was expected to assume greater responsibility, she failed to rise to the occasion. Nor does a single instance of colleague Jeremy Sisselman complimenting Plaintiff (or stating she could be promoted "eventually") create a genuine dispute as to her underperformance. Indeed, Sisselman himself did not think Plaintiff should have been promoted to Vice President and criticized her job performance repeatedly. (DSF ¶¶65-76.)

Plaintiff tries to muddy the waters with two variations of a spreadsheet identifying purported primary and secondary coverage. (Pl. Br. 14-15; Declaration of Valdi Licul ("Licul Dec.") Exs. N, U.) It is undisputed that Bolger and Zaman knew which DCM individual covered which clients (DSF ¶171), and they have confirmed which comparator had responsibility for which account. (DSF Repl. ¶152.) Bolger testified the spreadsheet had errors as to coverage responsibility and that it was created to secure capital from their parent company, not to identify coverage or give "credit" to individuals for revenue. (DSF Repl. ¶152.) Even if Plaintiff's false assertion that Nieves or Asmundson's primary coverage was less than stated is credited, it is immaterial given the following undisputed facts: Satake, Bolger, and Zaman considered several factors when awarding bonuses to Plaintiff and the others, including prospecting, training juniors, and respective levels of proactive secondary coverage (DSF ¶¶118-119, 246-247); Bolger disapproved of Plaintiff's Healthcare secondary coverage (DSF ¶194); Satake, Bolger, and Zaman considered Howard, a woman, to be the best performer of the four (and Plaintiff the worst); (DSF ¶¶104-106, 115-119, 124-125, 236-242, 291); and compensation reflected that ranking for 2017-2020. (DSF ¶¶195-198, 248-249, 253-254.) There is no genuine issue of material fact that Defendants determined pay based on legitimate factors other than sex.

    C.  <u>Plaintiff Has Failed to Identify Any Evidence of Pretext.</u>

Notwithstanding asserting 344 additional 56.1 statements, Plaintiff has failed to muster any evidence of pretext. It is undisputed that Plaintiff, Howard, Nieves, and Asmundson were assigned an initial number of lower-tiered clients (DSF ¶¶88, 96, 99, 102), that Plaintiff was assigned secondary coverage over two sectors (DSF ¶¶89, 94-95), and that Bolger was open to

Plaintiff attending REIT client meetings and calls[9] (DSF ¶92). Despite admitting she has no knowledge of Nieves or Asmundson's coverage, she asserts that they were given more client facing opportunities. (DSF Repl. ¶92). Mere speculation cannot give rise to a genuine fact dispute. Moreover, if anyone received more opportunities, it was Howard – to whom Nikko America assigned 13 clients at the outset and to whom it provided an opportunity to cover an entire sector of clients not already covered by an existing senior DCM member. (DSF ¶96.) It was only because Howard performed so well that she did not have time for more assignments.[10] (DSF ¶¶96, 174). ███████████████

███████████████████████████████████████

███████████████████████████████

## II. Plaintiff's Title VII, NYSHRL, and NYCHRL Claims Fail As a Matter of Law.

Plaintiff cannot point to any evidence of gender animus through any alleged comments by Nikko America management.[12] Indeed, all of the evidence points to the absence of intentional gender discrimination. Defendants paid Howard the highest among peers every year (DSF ¶¶ 195-198, 248-249, 253-254) and promoted Howard to Director and Executive Director before

---

[9] The assertion that Bolger resisted assigning Plaintiff clients in the three weeks he had just joined the Company is immaterial. It is undisputed he assigned her clients and indeed subsequently provided her the opportunity to cover the entire healthcare sector for two years. (DSF ¶¶94-95.)

[10] Nor do Plaintiff's assertions regarding ███ and ███ demonstrate pretext or undercut Defendants' affirmative defense. (Pl. Br. 16-17.) Neither has been identified as a comparator to Plaintiff. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[11] Defendants did not have a policy against consecutive promotions; it was merely unusual to occur. (DSF ¶233.)

[12] Plaintiff does not even argue this point in her brief, thus abandoning any such basis for her claim. *See Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 249 (S.D.N.Y. 2000).

Nieves and Asmundson (DSF ¶¶201, 235). It is further undisputed that multiple colleagues (Satake, Bolger, Zaman, Howard, Sisselman, Capozzoli) and a senior bank executive (Rich Eisenberg) considered Plaintiff an underperformer (DSF ¶¶65-76, 104, 115, 117-119, 177-179, 180-186), and that Satake had previously provided Plaintiff with positive reviews, but only in a less demanding role (DSF ¶¶58-64)—all of which undercut any inference of discrimination. The mere fact that Plaintiff was paid less is not enough to prove intentional discrimination. *Tomka v. Seller Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995). Plaintiff otherwise only points to the same arguments raised with her EPA claims.[13] As noted above, these arguments fail to create a genuine fact dispute that Plaintiff was even treated less well than male peers, much less intentionally discriminated against.[14]

### III. Plaintiff's Retaliation Claims Fail as a Matter of Law.

It is undisputed that the original decision to terminate Plaintiff's employment was made by March 2020, well before she engaged in any protected activity. (DSF ¶227.) The termination was not effectuated due to the start of the pandemic, and was rescheduled to occur in the fall (DSF ¶¶230, 256). However, by then, Plaintiff had engaged in protected activity, and Nikko America again put the termination on hold. (DSF ¶260.)

It is further undisputed that Plaintiff's FY 2016 performance review was lower compared to prior years and compared to peers (DSF ¶¶58, 63, 107-108); the three comparators earned more than Plaintiff starting in 2017 (DSF ¶¶195-198, 248-249); Nikko America promoted Howard and not Plaintiff to Director in 2019 (DSF ¶201); Zaman suggested Plaintiff consider a

---

[13] [redacted]

[14] Plaintiff's cases do not say otherwise. *Weinstock v. Columbia Univ.*, 1996 WL 658437, at *9 (S.D.N.Y. Nov. 13, 1996) (involving discovery dispute not summary judgment); *Stratton v. Dep't for the Aging*, 132 F.3d 869, 879 (2d Cir. 1997) (refusing to overturn jury verdict where there was multitude of evidence that adverse action arose immediately after younger employees were hired).

non-DCM position in 2019 (DSF ¶215-218); Bolger criticized Plaintiff's inability to secure an active book runner role in 2019 (DSF ¶220); Plaintiff received a negative FY 2019 review and corresponding bonus reduction (DSF ¶¶236-237, 249); and the termination plans were still scheduled to go forward in July 2020 (DSF ¶¶230, 255-256). All of these events occurred before Plaintiff raised any discrimination complaints.[15] On these facts, it is impossible for Plaintiff to show that her subsequent protected activity prompted her termination.[16] Plaintiff's unsupported assertion that her employment was no longer in jeopardy once she complained is factually untrue and legally flawed. *Boatright v. U.S. Bancorp*, 2020 WL 7388661, at *21 (S.D.N.Y. Dec. 16, 2020), *aff'd,* 2022 WL 351059 (2d Cir. Feb. 7, 2022). The making of a complaint does not mean an employer need forget poor performance or allow it to continue. *See id*.

Despite Plaintiff's efforts, the fundamental facts of the ▮▮▮ and ▮▮▮ incidents remain undisputed. Plaintiff's email contradicted advice Nikko America gave ▮▮▮ earlier that week; advice of which Plaintiff was aware. (DSF ¶¶264-267). The email caused the ▮▮▮ Chief Financial Officer to immediately contact Bolger in anger. (DSF ¶¶268-272.) As to ▮▮▮ it is undisputed that a senior Company employee was disappointed in her performance and complained about it. (DSF ¶¶281-284.) Plaintiff's mere disagreements with the import of these matters (DSF ¶287) does not create a genuine fact dispute. *See Bucek v. Gallagher Bassett*

---

[15] Plaintiff makes no claim in her briefing that she engaged in protected activity until just prior to her lawsuit. Although Plaintiff asserts in a single paragraph in her 56.1 counterstatement that, in 2019, she told Bolger she was unhappy that he was discounting her contributions and felt that she had to prove herself all the time (DSF ¶225), when asked repeatedly at deposition, she denied making any such complaint. (Chinn Dec. Ex. 1, Plaintiff Tr. 209:9-203:14, 216:12-22, 221:25-222:21; Chinn Dec. Ex. 2, Plaintiff II Tr. 356:6-357:18, 359:24-363:3, 363:4-22.) *See Tube City IMS, LLC v. Anza Cap. Partners*, 2016 WL 5864887, at *3, *8 (S.D.N.Y. Oct. 6, 2016). In any event, such a disclosure is not protected activity. (DSF ¶¶200-204.)

[16] Plaintiff's reference to *Quinn v. Green Tree Credit Corp.* is inapposite as the gradual adverse actions there occurred *after* the protected activity, as is Plaintiff's reliance on *Bentivegna v. People's United Bank*, 2017 WL 3394601, at *22 (E.D.N.Y. Aug. 7, 2017), where the court found evidence of direct retaliatory animus.

9

*Servs., Inc.*, 2018 WL 1609334, at *17 (S.D.N.Y. Mar. 29, 2018).[17]

Plaintiff's reliance on Bolger being upset that she accused him of gender discrimination also fails to give rise to any evidence of retaliatory animus. A natural response to feeling falsely accused does not constitute evidence of retaliation.[18]

### IV. Plaintiff Cannot Avoid Summary Judgment By Contradicting Her Own Sworn Testimony or Claiming Unfavorable Evidence Comes From "Interested Witnesses."

Plaintiff improperly attempts to use her declaration to contradict her own testimony at least 11 times.[19] *See Milani v. Int'l Bus. Mach. Corp., Inc.*, 2004 WL 3068451, at *2 (S.D.N.Y. Dec. 30, 2004) ("an affidavit that contradicts . . . prior testimony in an effort to create an issue is plainly improper."). Plaintiff also attempts (on dozens of occasions) to dispute facts by repeating the mantra that the evidence came from an "interested witness,"[20] typically without offering anything further. Merely alleging that a witness is "interested" does establish a fact dispute.[21]

### CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment should be granted.

---

[17] That Plaintiff was not given an opportunity to explain her failure is immaterial. *Doe v. Columbia University* arose in an entirely different context, involving a sexual assault investigation. 831 F.3d 46, 48 (2d Cir. 2016).

[18] *See Holleman v. Art Crating Inc.,* 2014 WL 4907732, at *20, 53 (E.D.N.Y. Sept. 30, 2014) (no inference of retaliation where defendant admitted feeling "upset," "shocked," and "insulted" at being accused of discrimination); *Kohler v. Brennan*, 238 F. Supp. 3d 1112 (E.D. Wisc. 2017) (". . . natural for someone to feel insulted when accused of unlawful discrimination . . . this does not give rise to an inference that the person will retaliate against the employee for making the accusation."). Plaintiff's cases do not support any different finding. *See Kazolias v. IBEW LU 363*, 806 F.3d 45 (2d Cir. 2015) (decisionmaker made express remarks plaintiffs "would be brought up on charges," and referred to them as "assholes."); *Sumner v. U.S.P.S.*, 899 F.2d 203, 210-211 (2d Cir. 1990) (supervisor testified that plaintiff's complaint had a "war-like attitude").

[19] Pl's DSF Resp. ¶¶70, 92-93, 123, 225, 252, 266, 270, 295-296, 298.

[20] Pl's DSF Resp. ¶¶21-22, 76, 105, 132-133, 143, 159-160, 174-175, 180, 272-273, 275, 281-282, 284-286, 300.

[21] *In re Dana Corp*. does not hold that a party can defeat summary judgment by merely identifying the witness as interested while failing to point to any contradictory evidence. 574 F.3d 219 (2d Cir. 2009); *Chiaramonte v. Animal Med. Ctr*., 677 F. App'x 689, 693 (2d Cir. 2017) ("That an 'interested witness' has testified regarding a certain issue…does not in and of itself raise a genuine issue of material fact."); *see also LaFrenier v. Kinirey*, 550 F.3d 166, 168 (1st Cir. 2008); *Inmon v. Mueller Copper Tube Co., Inc*., 757 F. App'x 376, 382 (5th Cir. 2019). *Reeves v. Sanderson Plumbing Products, Inc.* is inapposite, as it does not involve summary judgment but rather a *post-trial* motion following a verdict. 530 U.S. 133, 134 (2000).

10

Dated:  May 20, 2022
New York, New York

Respectfully submitted,

**PROSKAUER ROSE LLP**

By:
/s/ *Lloyd B. Chinn*

Lloyd B. Chinn

Eleven Times Square
New York, New York 10036
(212) 969-3000
lchinn@proskauer.com

Alexandra R. Reynolds
One International Place
Boston, MA 02110
Tel. 617.526.9600
Fax 617.526.9899
areynolds@proskauer.com

*Attorneys for Defendants*
*SMBC Nikko Securities America, Inc.*
*John Bolger*
*Omar Zaman*